# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of:

The Use of a Cell-Site Simulator to Identify the Cellular Device or Devices described in Attachment A.

Case No. 19-M-035

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

The Use of a Cell-Site Simulator to Identify the Cellular Device or Devices described in Attachment A.

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:
- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 21, USC, § § 841(a)(1) and 846, and Title 18, USC § § 1956 and 1957

The application is based on these facts: See Affidavit in Support of an Application for a Search Warrant. To ensure technical compliance with the Pen Register Statute, 18 U.S.C. §§ 3121-3127, this warrant also functions as a pen register order. Consistent with the requirement for an application for a pen register order, I certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by [investigative agency]. See 18 U.S.C. §§ 3122(b), 3123(b)."

☒ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Kellen J. Williams, Special Agent DEA
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: April 2, 2019

_____
*Judge's signature*

City and State: Milwaukee, Wisconsin

David E. Jones, U.S. Magistrate Judge
*Printed Name and Title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Kellen J. Williams, being first duly sworn, hereby depose and state as follows:

### I. INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique further described in Attachment B, in order to identify the cellular device or devices carried by David RAMIREZ-Limon and Lorenzo GUZMAN (the "Target Cellular Device"), described in Attachment A.

2. I have been employed as a Special Agent with the Drug Enforcement Administration ("DEA") since September 2012. I am currently assigned to the DEA Milwaukee District Office, High Intensity Drug Trafficking Area ("HIDTA"). As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

3. I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. I have had both formal training and have participated in numerous complex drug trafficking investigations, including ones using wiretaps. More specifically, my training and experience includes the following:

   a. I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

b. I have also relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;

c. I have extensive experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

d. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

e. I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

f. I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

g. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

h. I have been assigned to court-authorized wiretaps and have been trained to operate the equipment utilized to conduct such operations;

i. I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

j. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. This Court has authority to issue the requested warrant under Federal Rule of Criminal Procedure Rule 41(b)(1) & (2) because the Target Cellular Device is currently believed to be located inside this district because both Lorenzo GUZMAN and David RAMIREZ-Limon are believed to reside in the Eastern District of Wisconsin ("EDWI"). On numerous occasions within the last fourteen days, both Lorenzo GUZMAN and David RAMIREZ-Limon have been spotted by case agents in the EDWI. Pursuant to Rule 41(b)(2), law enforcement may use the technique described in Attachment B outside the district provided the device is within the district when the warrant is issued.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) and 846, and Title 18, United States Code, Sections 1956 and 1957, have been committed, are being committed, and will be committed by Lorenzo GUZMAN, Arturo GUZMAN, David RAMIREZ-Limon, and others not yet identified. There is also probable cause to believe that the identity of the Target Cellular Device will constitute evidence of those criminal violations. In addition, in order to obtain additional evidence relating to the Target Cellular Device, its user, and the criminal violations under investigation, law enforcement must first identify the Target Cellular Device. There is probable cause to believe that the use of the investigative technique described by the warrant will result in officers learning that identifying information.

7. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. See 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. See 18 U.S.C. § 3123(b)(1).

## II. PROBABLE CAUSE

### A. Background

8. Since September 2017, case agents have been investigating the drug trafficking and money laundering activities of Lorenzo GUZMAN, Arturo GUZMAN, David RAMIREZ-Limon and others.[1] Based on information from confidential sources, case agents identified the GUZMAN DTO as an organization that coordinates the transportation of cocaine, heroin and methamphetamine from Mexico to Milwaukee, Wisconsin, as well as drug proceeds from the Milwaukee, Wisconsin area to Chicago, Illinois, where it is believed to be wired to unknown bank accounts or bulk cash smuggled directly to unknown sources of supply based in Mexico.

9. On October 24, 2017, Chicago DEA was contacted by Miami DEA and advised that a Miami-based Confidential Source ("CS-1") had received a contract to pick up approximately $100,000 in drug proceeds in Chicago, Illinois. Miami DEA provided (312) 343-9984 as the contact number for the person in possession of the money in Chicago. Later that day, CS-1 contacted (312) 343-9984 and spoke with an unknown male Hispanic ("UM"). During the conversation, the UM and CS-1 agreed to meet at approximately 2:00 p.m. in the area of Midway Airport.

10. Case agents believe that CS-1's information is credible and reliable for the following reasons: CS-1 has given case agents detailed and corroborated information concerning numerous individuals involved in drug trafficking and money laundering, which case agents have independently verified; CS-1 has provided information to agents, which directly led to numerous

---

[1] Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

seizures of U.S. Currency; CS-1 has provided information against the CS's penal interest in that the CS has admitted his/her involvement in drug trafficking activities in the past; CS-1 is cooperating with case agents in hope of favorable consideration regarding a deferred action status; and CS-1 has had an adequate opportunity to directly observe the events discussed and has heard conversations directly from the individuals discussed herein.

11. On October 24, 2017, at approximately 1:12 p.m., CS-1 received a text message from the UM at (312) 343-9984 which indicated that the UM wanted to meet at the McDonalds located at 5733 S. Kedzie, Chicago, Illinois. At approximately 2:02 p.m., agents observed a gray Chevy Malibu, bearing Illinois plate AH41316, park next to the undercover ("UC") vehicle. Immediately thereafter, case agents observed a Chicago DEA undercover agent (UC) exit the vehicle and approach the UM, who had just exited the Chevy Malibu. Moments later, case agents observed the UC retrieve a large plastic bag from the UM who had just removed it from the passenger compartment of the Chevy Malibu. Approximately one minute later, case agents observed the UC enter the UC vehicle with the bag and depart the area. The bag was later found to contain $96,090 in U.S. currency.

12. On October 30, 2017, the UC received a call from (414) 391-9794 on a recorded phone line from an Unknown Male ("UM"), who told the UC he was ready to deliver approximately $153,000 to the UC in Chicago the next day. The UC recognized the voice from (414) 391-9794 as the same voice from the previous money delivery which occurred on October 24, 2017.

13. On October 31, 2017, at approximately 11:00 a.m., the UC called the UM at (414) 391-9794 to confirm the money delivery. The UM told the UC the money was ready and he

would text the UC with an address for the meeting. At approximately 12:54 p.m., the UC received an incoming text from (414) 391-9794 that read "4934 S Kedzie ave 60632".

14. After several delays, the UC called the UM to locate him. The UM told the UC he was in Milwaukee and would be having his cousin deliver the money at the Kedzie address. At 10:57 a.m., Milwaukee DEA case agents observed the Chevy Malibu parked on S. 8th Street, near the address of 3008 S. 8th Street. A query of real estate records revealed Esmeralda GUZMAN is the owner of 3008 South 8th Street, Milwaukee. Case agents are aware that Esmeralda GUZMAN is the sister of Arturo GUZMAN and Lorenzo GUZMAN. At 12:20 p.m., case agents observed two unknown Hispanic males exit the residence of 3008 S. 8th Street and enter a gray Acura sedan. Case agents followed the gray Acura to 2588 N. Frederick Ave, Milwaukee, Wisconsin. A public database search of 2588 N. Frederick Ave, Milwaukee, Wisconsin revealed Lorenzo GUZMAN was previously a resident of apartment 201. Also on that date, Chicago DEA case agents stopped a vehicle in the area and identified the driver as Everd CABRERA. Inside the vehicle, agents seized approximately $136,030. A consent search of CABRERA's residence revealed an additional $59,261 and one kilogram of cocaine. Case agents believe the UM who arranged for the money pickups is in fact Lorenzo GUZMAN.

### B. January 2019

15. In January 2019, DEA Chicago Group 32 received information from DEA Lexington that an unknown Hispanic male in Chicago was in possession of $100,000 that needed to be laundered. On January 4, 2019, a DEA Chicago undercover officer received a phone call from an unidentified Hispanic male stating that he was sending a courier to deliver the money. Shortly thereafter, the UC met with and received $90,620 U.S. currency from a subject later identified as Joshua NICASIO. DEA Chicago obtained court authorized location data and

conducted toll analysis for both the phone number that the unknown male originally used to contact the UC as well as the phone utilized by NICASIO. Location information indicated that the phone utilized by the unknown male was in the Milwaukee area. DEA Milwaukee case agents conducted surveillance and determined the target telephone was likely inside a residence at 1922 S. 57th St, Milwaukee. An administrative subpoena for utility information confirmed this address is rented by Smart Drywall, LLC, a business registered to Arturo GUZMAN. While on surveillance, case agents observed Lorenzo GUZMAN exit the residence and believe Lorenzo GUZMAN is the person who used the target phone and arranged the Chicago money pickup.

### C. March 2019

16. In early March 2019, case agents met with CS-2 in Milwaukee, WI. CS-2 stated RAMIREZ-Limon is a runner for a family-run operation. CS-2 stated RAMIREZ-Limon divorced and married into a new family. According to CS-2, RAMIREZ-Limon's wife, Esmeralda GUZMAN, along with her brothers, mainly Lorenzo GUZMAN and Arturo GUZMAN, were involved in a large scale cocaine, heroin, and methamphetamine trafficking organization in Milwaukee. CS-2 stated he/she has purchased quantities of cocaine over 100 grams from RAMIREZ-Limon in the past.

17. Case agents believe the CS-2's information is credible and reliable for the following reasons: CS-2 has given case agents detailed and corroborated information concerning numerous individuals involved in drug trafficking and money laundering, which case agents have independently verified; CS-2 has provided information against the CS's penal interest in that the CS has admitted his/her involvement in drug trafficking activities in the past; CS-2 is cooperating with case agents in hope for favorable consideration regarding a State of Wisconsin criminal case,

and CS-2 has had an adequate opportunity to directly observe the events discussed and has heard conversations directly from the individuals discussed herein.

18. Case agents believe the CS-2's information is credible and reliable for the following reasons: CS-2 has given case agents detailed and corroborated information concerning numerous individuals involved in drug trafficking and money laundering, which case agents have independently verified; CS-2 has provided information against the CS's penal interest in that the CS has admitted his/her involvement in drug trafficking activities in the past; CS-2 is cooperating with case agents in hope for favorable consideration regarding a State of Wisconsin criminal case, and CS-2 has had an adequate opportunity to directly observe the events discussed and has heard conversations directly from the individuals discussed herein.

19. Within a week after meeting with CS-2, case agents set up a controlled buy of over 100 grams of cocaine from RAMIREZ-Limon.[2] At the direction of case agents, CS-2 called RAMIREZ-Limon to arrange for the buy. Shortly thereafter, case agents observed RAMIREZ-Limon exit his residence at 7001 W. Bennett Ave, Milwaukee WI, and drive to the meet location. CS-2 met with RAMIREZ-Limon and received a large amount of cocaine directly from RAMIREZ-Limon. RAMIREZ-Limon was then followed directly back to his residence. CS-2 positively identified RAMIREZ-Limon as the person who provided CS-2 with cocaine. Case

---

[2] I know a "controlled buy" is a law enforcement operation in which an informant purchases drugs from a target. The operation is conducted using surveillance, usually audio and video recording equipment, and pre-recorded purchase money. When an informant is used, s/he is searched for contraband, weapons, and money before the operation. The informant is also wired with a concealed body recorder and/or a monitoring device. When the transaction is completed, the informant meets case agents at a pre-determined meet location and gives the purchased drugs and the recording/monitoring equipment to the case agents. The informant is again searched for contraband, weapons, and money and interviewed by the case agents about the drug transaction. A sample of the suspected drugs is field tested by the case agents for the presence of controlled substances and placed in inventory pursuant to normal inventory procedures.

agents also positively identified RAMIREZ-Limon from his State of Wisconsin driver's license photograph.

20. Approximately two weeks later, case agents set up a second controlled buy of over 100 grams of cocaine from RAMIREZ-Limon. At the direction of case agents, CS-2 called RAMIREZ-Limon to arrange for the buy. Shortly thereafter, case agents observed RAMIREZ-Limon arrive at his residence at 7001 W. Bennett Ave, Milwaukee, WI, and entered the residence. Within a few minutes RAMIREZ-Limon exited the residence and drove to the meet location. CS-2 met with RAMIREZ-Limon and received a large amount of cocaine directly from RAMIREZ-Limon. RAMIREZ-Limon was then followed directly to a warehouse located at 1959 S. 54th St, Milwaukee, WI, and went inside.

21. On March 25, 2019, case agents conducted additional surveillance at 1959 S. 54th St, Milwaukee, WI. Case agents observed Lorenzo GUZMAN exit the warehouse. Case agents positively identified GUZMAN from his State of Wisconsin driver's license photograph.

### III. MANNER OF EXECUTION

22. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

23. To facilitate execution of this warrant, law enforcement may use an investigative device that sends signals to nearby cellular devices, including the Target Cellular Device, and in reply, the nearby cellular devices will broadcast signals that include their unique identifiers. The investigative device may function in some respects like a cellular tower, except that it will not be

connected to the cellular network and cannot be used by a cell to communicate with others. Law enforcement will use this investigative device when they have reason to believe that Lorenzo GUZMAN or David RAMIREZ-Limon is present. Law enforcement will collect the identifiers emitted by cellular devices in the immediate vicinity of the Target Cellular Device when the subject is in multiple locations and/or multiple times at a common location and use this information to identify the Target Cellular Device, as only the Target Cellular Device's unique identifiers will be present in all or nearly all locations. Once investigators ascertain the identity of the Target Cellular Device, they will cease using the investigative technique. Because there is probable cause to determine the identity of the Target Cellular Device, there is probable cause to use the investigative technique described by the warrant to determine the identity of the Target Cellular Device.

24. The investigative device may interrupt cellular service of cellular devices within its immediate vicinity. Any service disruption will be brief and temporary, and all operations will attempt to limit the interference cellular devices. Once law enforcement has identified the Target Cellular Device, it will delete all information concerning non-targeted cellular devices. Absent further order of the court, law enforcement will make no investigative use of information concerning non-targeted cellular devices other than distinguishing the Target Cellular Device from all other devices.

### IV. AUTHORIZATION REQUEST

25. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

26.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the person carrying the Target Cellular Device would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

27.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to identify the Target Cellular Device outside of daytime hours.

28.     A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B when the officers to whom it is directed have reason to believe that Lorenzo GUZMAN and/or David RAMIREZ-Limon are present at certain locations, including, but not limited to:

      7001 West Bennett Avenue, Milwaukee, WI

      1922 South 57th Street, Milwaukee, WI

      1959 South 54th Street, Milwaukee, WI

## ATTACHMENT B

The "Target Cellular Device" is the cellular device or devices carried by Lorenzo GUZMAN and/or David RAMIREZ-Limon. Pursuant to an investigation of Lorenzo GUZMAN and David RAMIREZ-Limon for violations of Title 21, United States Code, Sections 841(a)(1) and 846, and Title 18, United States Code, Sections 1956 and 1957, this warrant authorizes the officers to whom it is directed to identify the Target Cellular Device by collecting radio signals, including the unique identifiers, emitted by the Target Cellular Device and other cellular devices in its vicinity for a period of thirty days, during all times of day and night.

Absent further order of a court, law enforcement will make no affirmative investigative use of any identifiers collected from cellular devices other than the Target Cellular Device, except to identify the Target Cellular Device and distinguish it from the other cellular devices. Once investigators ascertain the identity of the Target Cellular Device, they will end the collection, and any information collected concerning cellular devices other than the Target Cellular Device will be deleted.

This warrant does not authorize the interception of any telephone calls, text messages, or other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).

Case 2:19-mj-00035-NJ   Filed 04/02/19   Page 14 of 14   Document 1